**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 19-10117 |
| | ) | |
| v. | ) | |
| | ) | |
| FELICITY HUFFMAN, | ) | |
|     *Defendant* | ) | |

**DEFENDANT FELICITY HUFFMAN'S REPLY**
**TO GOVERNMENT'S SENTENCING MEMORANDUM**

The government's Consolidated Sentencing Memorandum (Doc. No. 423) argues that "[d]efendants who perpetrate frauds comparable to this one, including cheating on tests and misrepresenting academic records, are routinely sentenced to terms of incarceration." *Id*. at 10. But the cases the government cites to support that proposition are very different from this case. The government does not describe the sentencing guidelines ranges applicable in any of the federal cases it cites, although most of those ranges are matters of public record. The government's omission is telling; in fact, the guidelines ranges in each of those cases was higher than Ms. Huffman's—*much* higher in most cases. The defendants in the cases the government cites were also typically the masterminds of the schemes—the equivalent of Rick Singer in this case. And in the cases the government cites, individuals like Ms. Huffman—retail customers of the scheme's ringleader—were often not prosecuted at all.

By choosing cases so remarkably different than this case, the government's Consolidated Sentencing Memorandum in fact reinforces what defendant's Sentencing Memorandum demonstrates: that Judges almost always impose probationary sentences on similarly situated defendants in cases like these.

This Memorandum quotes the government's description of the 11 federal cases cited in its Consolidated Sentencing Memorandum, then sets forth critical facts the government omitted about each of those cases. Because Judges imposing sentence in these cases are all bound to follow 18 U.S.C. §3553(a), and PACER provides reliable information about the results in these cases, federal cases provide the best source for comparative sentencing data. Official court data from state prosecutions is much less readily available, but news reports and other public information shows that the state cases the government cites are likewise readily distinguishable from the government's case against Ms. Huffman.

A. FEDERAL CASES:

| Case | Charge(s) | Prison Term |
|---|---|---|
| *United States v. Barrington*, 4:08-cr-00050-WS-GRJ (N.D. Fla.)[1] | Defendant convicted of scheming to access university's online grading system and changing grades for themselves and friends applying to graduate school, as well as changing residencies to non-resident students would qualify for in-state tuition. | 84 months |

*What the Government left out:*

Defendant Barrington was convicted, after trial, for leading a group who installed a "keylogger"—a device that captures and transmits every key stroke a computer makes, on the computers at the Registrar's Office at Florida A&M University. *United States v. Barrington*, 648 F.3d 1178, 1184-87 (11th Cir. 2011). He used the device to access and falsify over 650 grades for at least 90 students, charging at least some of the students $600 for each of the grades he changed. *Id* at 1184 n.3.[2] The jury found Barrington guilty of each count of a five-count indictment charging

---

[1] *See* government's Consolidated Sentencing Memorandum at 10.

[2] *See also* WCTC.tv, *FAMU Student Sentenced To 84 Months In Prison In Computer Intrusion, Grade Changing Scam* (Sep. 22, 2009 (quoting United States Attorney's Office Press Release)), https://www.wctv.tv/home/headlines/60273627.html

him with conspiracy to commit wire fraud using a protected computer in violation of 18 U.S.C. §§ 371 and 1349; fraud using a protected computer in violation of 18 U.S.C. §§ 1030(a)(4) and (c)(3)(A) and 2; and three counts of aggravated identity theft in violation of 18 U.S.C. §§ 1028A and 2. *Id*. at 1183. The Court of Appeals concluded that the defendant's "84-month sentence was within the advisory Guidelines range as to Counts 1 and 2, and statutorily mandated as to Counts 3, 4, and 5." *Id*., n.1. Defense counsel has found nothing in the public record suggesting that the government prosecuted any of Barrington's customers.

| Case | Charge(s) | Prison Term |
|---|---|---|
| *United States vs. Lorenzo Garcia,* 3:11-cr-01830-DB-1 (W.D. Tex.)[3] | El Paso School District Superintendent pleaded guilty to directing staff to "change passing grades to failing grades in an effort to prevent qualified students from taking the 10th grade [Texas Assessment of Knowledge and Skills Test]." | 42 months |

*What the Government left out:*

In *United States v. Garcia*, 3:11-cr-01830 (W.D. Tex.), the defendant, a former school superintendent, submitted false information to the district in order to steer a lucrative contract to a vendor owned by a woman with whom he had a relationship. (Doc. No. 3). In order to bypass ordinary school district contracting procedures and eliminate competition, the defendant conspired with the vendor to submit a false affidavit claiming it was the "sole source" of educational services provided. *Id*. He pleaded guilty to conspiracy to commit mail fraud. Because of enhancements for sophisticated means, status as organizer and leader of the fraud, and abuse of a position of trust, the resulting guidelines range was 78-97 months. *Id*. (Doc. No. 114).

---

[3] *See* government's Consolidated Sentencing Memorandum at 11.

B5039383.1

The defendant also pleaded guilty to an information filed in a separate matter, charging that he manipulated school testing data and statistics in order to obtain performance bonuses tied to compliance with federal funding requirements. *See United States v. Garcia*, 3:12-cr-1362 (Doc. No. 1). Garcia manipulated information concerning the demographic makeup and grade classification of his district, which had a large population of foreign students with limited English proficiency. The fraudulent scheme involved denying foreign students properly earned credits and discouraging other students from enrolling in school. The guidelines range in the second cases was 235-293 months. *United States v. Garcia*, 3:11-cr-01830 (W.D. Tex.)(Doc. No. 114). The court sentenced Garcia to a below guidelines sentence: 42 months' imprisonment, to be served concurrently on the two cases. *Id.*

| Case | Charge(s) | Prison Term |
|---|---|---|
| *United States v. Ozell Clifford Brazil*, CR-02-00882-SVW (C.D. Cal.)[4] | Reverend who founded program to help minority students get into college convicted of mail fraud for advising students to fraudulently claim on scholarship forms that "they were orphans or came from broken homes." | 41 months |

*What the Government left out:*

Brazil was convicted, after trial, of seven counts of mail fraud and seven counts of federal student financial assistance fraud. CR-02-00882-SVW (C.D. Cal.)(Doc. No. 72). The indictment charged that Brazil assisted college students and prospective college students in submitting financial aid applications to the Department of Education that falsely claimed the students were orphans or wards of the court, misrepresented family income, and concealed the parents' true income and assets. Brazil also provided students with letters to college financial aid personnel that falsely represented that the students did not get financial support from their parents. *Id.* (Doc. No 129). The

---

[4] *See* government's Consolidated Sentencing Memorandum at 11.

B5039383.1

public record does not disclose the guidelines range, but it was clearly much higher than 0 to 6 months. Brazil's fraud was extensive: according to a Department of Education press release issued after sentencing, the government "identified approximately 400 students who went through Brazil's program. Those individuals received well over $10 million in financial aid. Investigators obtained detailed information from 22 students, who received $716,179 in grants and $382,393 in loans."[5] The Judge imposed a 41-month sentence. CR-02-00882-SVW(C.D. Cal.)(Doc. No. 72). The government did not prosecute the students.[6] Nothing in the public record suggests that any of the students' parents were prosecuted.

| Case | Charge(s) | Prison Term |
|---|---|---|
| *United States v. Patricia Adams Lambert*, 1:15-cr-00004 (E.D. Tx.)[7] | Beaumont School District Superintendent pleaded guilty to "directly or indirectly encourag[ing] teachers and staff to manipulate students' standardized tests scores or had knowledge that cheating occurred." | 40 months |

*What the government left out:*

In *United States v. Lambert*, 1:15-cr-00004 (E.D. Tex.) the defendant, an Assistant Superintendent, orchestrated a sophisticated scheme to defraud her school district. *Id.* (Doc. No. 2). She diverted and stole money from school booster clubs and awarded vendor contracts to companies owned by family members who would mark up goods and services by as much as 300%. *Id.* The defendant also ordered teachers to correct students' answers on standardized testing to boost scores and secure federal funding. *Id.* She pleaded guilty to defrauding a federal program and conspiracy

---

[5] *See Student Aid Scam Results in Three Years' Prison for LA Minister,* U.S. Department of Education, Investigative Reports (Oct. 21,2013), https://www2.ed.gov/about/offices/list/oig/invtreports/ca102003.html

[6] *Id.*

[7] *See* government's Consolidated Sentencing Memorandum at 11.

to defraud the government. *Id.* The guidelines range calculation does not appear in the docket, but the parties stipulated to enhancements for sophisticated means, abuse of a position of trust, and a loss amount of $500,000 (Doc. Nos. 63, 100), so they must have been at least 33 to 41 months.[8] The Court imposed a 40-month sentence. *Id.* (Doc. 109).

| Case | Charge(s) | Prison Term |
| --- | --- | --- |
| *United States v. Lance Brauman, Neil Elliott, Ryan Cross & Lyles Lashley,* 6:05-cr-10197-MLB & 6:05-cr-10232-34-MLB (D. Kan.)[9] | Barton County Community College coaches and athletic director convicted of mail and wire fraud for taking online classes for student-athletes to make it appear as if the students were eligible to earn junior colleges degrees. | Ranging from 12 months and one day to 12 weekends |

*What the government left out*:

These related cases concern a scheme by college coaches and an athletic director who arranged to have athletes obtain admission or academic credit by purporting taking correspondence course; in fact, the work would be done by others. *See United States v. Cross*, 05-cr-10232 (D. Kan.) (Doc. No 1).[10] Cross was sentence to one year and one day *following trial*. While the guidelines calculation does not appear on the docket for defendants Brauman, *see* 05-cr-10197 (D.Kan); Elliott, *see* 05-cr-10233 (D. Kan.); or Lashley, *see* 05-cr-10234 (D. Kan.), the docket reveals that for defendant Cross (who was *not* alleged to have been a leader of the scheme), the Probation Department calculated the range as 18 to 24 months. *United States v. Cross*, 05-cr-10232 (D. Kan.) (Doc. No 17).

---

[8] The math is as follows: BOL=7, plus 2 (abuse of position of trust), plus 2 (sophisticated means) plus 12 (loss amount), minus 3 (acceptance of responsibility) equals an adjusted offense level of 20.

[9] *See* government's Consolidated Sentencing Memorandum at 12.

[10] See also  https://www.espn.com/college-sports/news/story?id=2611020

In addition, the government fails to mention that three other coaches, part of the same scheme, received sentences of probation. See *United States v. Wolf,* 6:04-cr-10257 (D. Kan.)*; United States v. Skillman,* 6:05-cr-10060 (D. Kan.)*; United States v. Campbell*, 6:05-cr-10087 (D. Kan.). In *Wolf*, the government moved for a substantial assistance departure. But no such motion was filed in the *Skillman* or *Campbell* cases. Nothing in the public record indicates that the government prosecuted any of the athletes involved in the scheme (or their parents).

| Case | Charge(s) | Prison Term |
|---|---|---|
| *United States v. Mellissa Krystynak,* 5:18-cr-00196 (S.D.W. Va.) | Mother, who was a counselor at her children's school, pleaded guilty to changing 34 of her daughter's grades, which her daughter then used to apply to college. | 6 months |

*What the government left out:*

In *United States v. Krystynak,* 5:18-cr-00196 (W.D. Va.), a high school counselor, used her position and access to the school's electronic grading program to change her daughters' grades at least 34 times. *Id.* (Doc. No. 45). The falsely inflated grades were transmitted to colleges and universities. *Id*. One of the defendant's daughters was accepted to a school and received $10,000 in merit-based scholarships. The defendant pleaded guilty to mail fraud. Based in part on an enhancement for abuse of trust, the guidelines range was 8-14 months. *Id.* The Court imposed a below guidelines sentence: six months' imprisonment. *Id.* (Doc. No. 50).

| Case | Charge(s) | Prison Term |
|---|---|---|
| *United States v. Joseph Fonge,* 1:14-cr-10194-WGY (D. Mass.)[11] | Father pleaded guilty to wire fraud for falsifying financial aid applications so that his daughter could attend a university. | 4 months |

*What the government left out:*

The government charged the defendant with falsifying financial aid applications and thereby obtaining more than $170,000 in financial aid from Harvard over three years. *United States v. Fonge,* 14-cr-10194-WGY (D. Mass.) (Doc. No. 1). The Court adopted the Probation Department's guidelines calculation, which established the guidelines range as 8 to 14 months. *Id.* (Doc. Nos. 15). Judge Young imposed a below guidelines sentence: four months.

| Case | Charge(s) | Prison Term |
|---|---|---|
| *United States v. Bosung Shim,* 1:13-cr-00367-TSE-1 (E.D. Va.) | Aspiring medical student attempted to hack into multiple computer systems, including the Association of American Medical Colleges system, in order to change his Medical College Admission Test scores. | 3 months, plus 7 months in a halfway house |

*What the government left out:*

The defendant, intending to change his medical school test score, hired hackers to launch a distributed denial of service attack again the Association of American Medical Colleges system, and, thereafter, to repeatedly gain access the Association's computers, causing $31,653.24 of damage to those computers. *Id.* (Doc. Nos. 2, 7). The PSR calculated the guidelines range as 10 to 16 months. *Id.* (Doc. No. 14). The Court imposed a sentence at the low end of the guidelines range: three months' imprisonment, followed by seven months' community confinement. *Id.* (Doc. No. 16).

---

[11] *See* government's Consolidated Sentencing Memorandum at 12.

B. STATE CASES

The government's Consolidated Memorandum also cites several state prosecutions. None are comparable, and the government's descriptions of those cases fails to mention significant information facts that undermine its position.

For example, the Consolidated Memorandum cites the sentences imposed on nine defendants in the widely publicized Atlanta school system cheating scandal.[12] Each was prosecuted and convicted for violating Georgia's RICO statute following the longest trial in Georgia's history.[13] The defendants the government identifies each participated (and some led) a scheme, ongoing for at least seven years, to boost standardized test scores for Atlanta high school students—scores that were tied to the defendants' obtaining tenure and performance bonuses.[14] The scheme was far-reaching: an independent investigation ordered by Georgia's governor resulted in an 800-page report implicating 178 teachers and principals, including 82 who confessed to cheating.[15] State prosecutors indicted 35 defendants. The government correctly describes the sentences imposed on the nine defendants its listed in its Consolidated Sentencing Memorandum—all convicted after trial. But the government fails to inform the Court that most of the 35 defendants who accepted

---

[12] *See* government's Consolidated Sentencing Memorandum at 14-15, describing sentences imposed on Sharon Davis-Williams; Tamara Cotman; Michael Pitts; Angela Williamson; Tabeeka Jordan; Shani Robinson; Diane Buckner-Webb; Dana Evans; Donald Bullock.

[13] See Rhonda Cook & Ty Tagami, *Judge Reduces Sentences for 3 Educators in Atlanta Cheating Scandal,* Governing (May 1, 2015), https://www.governing.com/topics/education/tns-atlanta-cheating-resentencing.html

[14] Michael Winerip, *Ex-Schools Chief in Atlanta is Indicted in Testing Scandal,* New York Times, March 29, 2013, https://www.nytimes.com/2013/03/30/us/former-school-chief-in-atlanta-indicted-in-cheating-scandal.html; Alan Blinder, *Atlanta Educators Convicted in School Cheating Scandal,* New York Times, April 1, 2015, https://www.nytimes.com/2015/04/02/us/verdict-reached-in-atlanta-school-testing-trial.html

[15] *Id.*

responsibility and pleaded guilty were sentence to probation, community service, and ordered to repay the bonuses they received.[16]

In three of the state cases the government cites, the defendants were sentenced to prison terms after they broke into schools, installed spyware on computers, then accessed those computers to change grades—either their own, or others:

- In *California v. Lai* (Orange County Sup. Ct)[17], the defendant was sentenced to a one-year prison term after he pleaded guilty to 20 felony counts of computer access and fraud and one felony count of second-degree commercial burglary. Lai, a tutor, broke into the high school and installed a keystroke recording device on a teacher's computer. Lai then hacked into the school's grading program to change grades. When he learned he was under investigation, Lai fled to South Korea and destroyed evidence.[18] Defense counsel has located nothing in the public recording suggesting that any of his student customers, or their parents, were charged.

- In *Indiana v. Sun*, 79D02-1304-FC-18 (Tippecanoe Sup. Ct. 2018), the Court sentenced the defendant to 90 days' imprisonment following his guilty plea to felony conspiracy to commit computer tampering and felony computer tampering. *See Sun v. State*, 2016 Ind. App. Unpub. LEXIS 801. Sun broke into his professors' offices, planted a keystroke recording device, and used the devise to change his grades.[19]

- In *California v. Khan* (Orange County Superior Ct.), the defendant was sentenced to 30 days after he broke into his school on multiple occasions, installed spyware on the

---

[16] Associated Press, *6 more former Atlanta Public Schools employees plead guilty in test-cheating scandal*, Fox News Channel (Jan. 6. 2014), https://www.foxnews.com/us/6-more-former-atlanta-public-schools-employees-plead-guilty-in-test-cheating-scandal

[17] *See* government's Consolidated Sentencing Memorandum at 12.

[18] Matt Coker, Timothy Lance Lai Gets Year in Jail for Massive Corona Del Mar High School Cheating Scandal, OC Weekly, https://ocweekly.com/timothy-lance-lai-gets-year-injail-for-massive-corona-del-mar-high-school-cheating-scandal-6463442/; Hannah Fry, Tutor Pleads Gutily in Corona del Mar High Cheating Scandal; Gets 1 Year in Jail, https://www.latimes.com/social/daily-pilot/news/tn-dpt-me-0805-lai-2-150804-story.html.

[19] *See* Ron Wilkins, *Grade☐altering Scheme Sends ex☐Purdue Student to Jail*, Journal & Courier (Feb. 28, 2014); https://www.jconline.com/story/news/crime/2014/02/27/gradealtering-scheme-sends-ex-purdue-student-to-jail-/5875821/

computers of teachers and administrators, and used the passwords he obtained in the process to change grades and test scores.[20]

Finally, the government cites *Connecticut v. McDowell,* S20N-CR11-0128770 (Norwalk Sup. Ct.), which it describes as involving a "homeless mother [who] pleaded guilty to fraudulently claiming her babysitter's address as her own so her child could attend school in a different district."[21] The government neglects to mention, however, that these charges were consolidated for sentencing with defendant's conviction for distributing crack cocaine to undercover officers (including, on one occasion, at her son's sixth birthday party).[22] And most notably, the government omits mention of the defendant's criminal history, which includes prior convictions, in separate incidents, for bank robbery and firearms possession. *Id.*

## C. CONCLUSION

Stated simply, a review of the cases cited by the government in its Consolidated Sentencing Memorandum show that those cases are very different than this one. Those cases do *not* support the government's contention that "[d]efendants who perpetrate frauds comparable to this one, including cheating on tests and misrepresenting academic records, are routinely sentenced to terms

---

[20] Peter Schelden, *Former Tesora Student Sentenced for Stealing Tests, Changing Grades*, Patch (Aug. 6, 2011), https://patch.com/california/missionviejo/former-tesoro-student-sentenced-for-test-stealing-gra2b1af820cd

[21] *See* government's Consolidated Sentencing Memorandum at 11

[22] *See* John Nickerson, *Affidavit: Tanya McDowell offered to sell drugs, pimp out prostitutes to undercover cops,* Stamford Advocate (June 14, 2011), https://www.stamfordadvocate.com/news/article/Affidavit-Tanya-McDowell-offered-to-sell-drugs-1421618.php; *see also* Ta-Nehisi Coates, *Woman Sentenced to Twelve Years for Drug Dealing, 'Stealing Education,'* The Atlantic (Feb. 7. 2012), https://www.theatlantic.com/national/archive/2012/02/woman-sentenced-to-twelve-years-for-drug-dealing-stealing-education/253742.

11

of incarceration." *Id*. at 10. Ms. Huffman respectfully requests that the Court reject the government's invitation to compare apples to oranges.

                              Respectfully submitted,

                              FELICITY HUFFMAN
                              By her attorneys,

                              */s/ Martin F. Murphy* _____
                              Martin F. Murphy BBO # 363250
                              Julia Amrhein BBO # 684912
                              Foley Hoag LLP
                              155 Seaport Boulevard
                              Boston, Massachusetts 02210-2600
                              Telephone: 617-832-1000
                              Facsimile: 617-832-7000
                              mmurphy@foleyhoag.com
                              jamrhein@foleyhoag.com

DATED: September 11, 2019

## CERTIFICATE OF SERVICE

     I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 11th day of September 2019.

                                                  *Martin F. Murphy*_____
                                                  Martin F. Murphy