## PROBATION OFFICE'S SUBMISSION IN RESPONSE
## TO COURT'S ORDER OF SEPTEMBER 10, 2019

The following information is being provided pursuant to Judge Indira Talwani's Order of September 10, 2019.

**Probation Office's Response to the Government's Objection #1 in United States v. Felicity Huffman; Docket No.: 0101 1:19CR10117-6:**

The Probation Office and the Court are not bound by the stipulations in the plea agreement and must conduct an independent analysis of the guidelines. The Probation Office has carefully analyzed the victim impact and loss/gain issues raised by the government and maintains its position on these matters. The amounts of money paid by the defendant represent neither a loss nor a gain under the guidelines. The government has included overly broad arguments in its objection, raising legal theories on losses related to USC and Georgetown. This defendant is only charged with conduct involving her participation in the college entrance exam cheating scheme. Accordingly, the Probation Office has only forwarded the related statements from the testing agencies to the Court. In addition, while the Court should focus its attention on the arguments related to that scheme, the Probation Office will respond herein to the arguments related to the college recruitment scheme and address the government's USSG §2B4.1 analysis, as these both of these topics are raised by the government in this objection and/or in public filings with the Court on this case regarding the sentencing guideline calculations.

Probation Office's Ongoing Analysis of Government's Guideline Positions

The letter issued by U.S. Attorney Andrew Lelling to the Court on August 23, 2019 indicates, "As an example, in the presentence reports received thus far, Probation has concluded that the defendants' crime caused no financial loss to any victim, even though the victims have provided written statements to the contrary and the parties have stipulated to the relevant enhancement for gain/loss. It is unclear at this stage why Probation has elected to disregard the government's submission and the victims' statements on this issue." Contrary to this assertion, the Probation Office has not disregarded the government's submissions or the statements from the schools and testing agencies on the issue of financial loss.

Since these cases were filed in March 2019, the Probation Office has spent a significant amount of time discussing how the guidelines should be computed. Since April 2019, when the first plea agreements were filed, the Probation Office has carefully evaluated the government's positions on loss and guideline application. This process has involved not only internal discussions and review of Application Notes and case law, but also consultation with the United States Sentencing Commission and specialists/officers in other districts. In addition to considering the government's written submissions, the Probation Office has had discussions with the government about these issues prior to the submission of the draft PSRs. The Probation Office has thoughtfully considered every document and position that the government has presented regarding guideline application.

The Probation Office has been consistent in its interpretation of the guidelines since the beginning. The government has stated that the Probation Office's approach is incorrect, while at the same time applying different guideline positions in plea agreements for co-defendants involved in

identical conduct and via their written objections to the draft PSRs. For example, in the plea agreements in this case, the parties specify that the value of the bribe represents "gain or loss"; however, they do not indicate which one it is, and it cannot be both. During the sentencing of related defendant John Vandemoer on June 12, 2019 before Judge Zobel, the Court inquired about the plea agreement and why the government was advocating for application of a different guideline. That plea agreement espoused a USSG §2B1.1 analysis, just like the plea agreements presented in this case, yet the government argued at the hearing for application of USSG §2B4.1, which the Court rejected. A further example is similarly situated defendants with plea agreements advocating different guideline applications. Laura Janke and Ali Khosroshahin are related defendants, who are both charged in Docket No.: 19-CR-10081-IT and who are both former soccer coaches at USC during the relevant period; however, their plea agreements contain different methodologies for calculating the guidelines.

It is not a unique circumstance that the Probation Office suggests a method of calculating the guidelines that differs from one or both of the parties. The presentence process provides an opportunity for the parties to confer and object with the ultimate resolution of disputed issues being the responsibility of the Court. The government has made the unwarranted assertion that the Probation Office has shirked its responsibility and arrived at its position by disregarding the information submitted. This is completely inaccurate.

The Probation Office submits that the calculations in this case are not straightforward. Even the staff at the Sentencing Commission has recognized that this case presents some challenging issues. When there are judgment calls to be made, the Probation Office errs to the benefit of the defendant (in cases where the government bears the burden of proof), and although the Probation Office maintains that its calculations are correct, they are also the most conservative option. Recognition of this fact is evidenced by the inclusion of potential grounds for an upward departure in some of the cases, noting that this may be a case where the proper calculation does not adequately capture the seriousness of the offense.[1] This is a circumstance we often see in reverse wherein the guidelines call for a significant enhancement for intended loss while the actual harm is significantly less.

Throughout this process, the Probation Office has remained objective, has investigated the issues at length, has considered every argument, and has simply disagreed with the positions proposed by the government to date. The Probation Office and the Court are not bound by the provisions in the plea agreement, and they must instead conduct an independent inquiry into the guideline calculations. The Probation Office has arrived at a different conclusion than the parties, and ultimately, it is up to the Court to consider and resolve the outstanding issues.

<u>Definition of Victim</u>

The Probation Office maintains that there is no victim of this offense pursuant to the specific guideline definition of victim in Application Note #1 to USSG §2B1.1, which defines victim as "(A) any person who sustained any part of the actual loss determined under subsection (b)(1); or (B) any individual who sustained bodily injury as a result of the offense." There is no evidence to

---

[1] The Probation Office has not included language for a potential upward departure in this case since the Probation Office and parties agree that the applicable guideline range is 0-6 months.

indicate that ACT, ETS, the College Board, or any other individual or entity, suffered an actual financial loss per this precise definition of loss. The Probation Office has reviewed the statements of ACT, ETS, and the College Board and recognizes that the testing agencies were impacted by the crime. The determination that the testing agencies are not victims per the guideline definition is not a suggestion that they did not suffer any harm from the offense in a more general sense (such as reputational harm and investigative costs, both of which are excluded under the guideline definition of loss). Under a more general definition of victim, and for purposes of restitution, the testing agencies may be considered a victim, as they were deprived of the honest services of their test proctors and of the intangible right to control their own assets. The definition of victim under the Mandatory Victim Restitution Act differs from the guideline definition. Per 18 U.S.C. §3663A(a)(2), a victim is defined as "a person directly or proximately harmed as a result of the commission of an offense for which restitution may be ordered."

<u>Government's Decision to Use the Value of the Bribe in the Plea Agreements</u>

The government determined from the outset of the case that the amounts of the bribes paid by the defendants would be used as a factor in calculating the guidelines. The government has taken the position that using the value of the bribe achieves a just result, appropriately reflects the defendant's culpability, and is a proper measure of the harm that resulted from the offense. The plea agreements indicate that the defendant's offense level is increased by a certain amount, because the *gain or loss* from the offense of conviction was in a range corresponding to the value of the bribe. The parties did not specify whether the value of the bribe was a gain or a loss, and it cannot be both. After these plea agreements, the government entered into plea agreements with related defendants adopting a new approach that USSG §2B4.1, the commercial bribery guideline, was applicable. The Probation Office disagrees with the use of USSG §2B4.1, and because the issue was raised by the government in a public filing in this case, will provide its analysis of this methodology later in this response. The Court rejected the USSG §2B4.1 analysis in the sentencing of related defendant John Vandemoer, and the Court found that there was no loss or gain under USSG §2B1.1. In this case, the government appears to be adhering to the plea agreement, which indicates that the bribe amount is a gain or loss under USSG §2B1.1.

<u>Analysis of Loss/Gain Under USSG §2B1.1</u>

As noted above, the parties' plea agreement does not take a position on gain/loss and instead proposes a loss range commensurate with the value of the bribe, noting that this figure represents gain or loss. The Probation Office respectfully disagrees and maintains that there was no actual or intended loss in this case and that gain should not be used as an alternative measure of loss. Merely because someone has been convicted of an economic offense does not mean that the loss amount must be greater than zero. *See United States v. Yihao Pu*, 814 F. 3d 818 (7th Cir. 2016). Application Notes #3(A)(i) and (ii) define actual loss as "the reasonably foreseeable pecuniary harm that resulted from the offense and intended loss as the "pecuniary harm that the defendant purposely sought to inflict." Application Note #3(A)(iii) defines pecuniary harm as "harm that is monetary or that otherwise is readily measurable in money. Accordingly, pecuniary harm does not include emotional distress, harm to reputation, or other non-economic harm." Application Note #3(A)(iv) defines reasonably foreseeable pecuniary harm as "pecuniary harm that the defendant knew, or under the circumstances, reasonably should have known, was a potential result of the offense."

The government contends that the value of the bribe paid by the defendant should be considered either a loss or a gain under the guidelines. The Probation Office disagrees that the bribe amount represents a gain or loss to anyone. The government has proposed two main categories of potential "losses" which it believes can be classified as reasonably foreseeable pecuniary harm that resulted from the offense; however, neither of these categories correlate to the value of the bribe, which was different for each defendant. The Probation Office does not agree that either category – 1) the salaries of coaches/proctors who accepted bribes; or 2) the out of pocket investigative/legal costs incurred by the schools and testing agencies – represents reasonably foreseeable pecuniary harms that the defendants should have known were potential results of the offense or which they purposely sought to inflict. In fact, these loss theories were raised by the government during the sentencing of related defendant John Vandemoer, and they were rejected by Judge Zobel, who agreed with the Probation Office's finding that there was no loss or gain. Furthermore, the government has provided no explanation as to how these categories tie into the value of the bribe, which is the figure used to compute the loss or gain enhancement under the plea agreement, and which differed amongst similarly situated defendants. For example, some defendants paid $15,000 in the college exam scheme, while others paid $75,000 for the same result. The harm alleged by the government would presumably be the same for each defendant, yet their guidelines would be different based on arbitrary negotiations with Singer. The same is applicable with the college recruitment scheme with different defendants paying different amounts for admissions slots.

First, the government contends that the employers (universities and testing agencies) lost the full value of the salaries paid to their employees (coaches and test proctors) who committed fraud and accepted bribes. The Probation Office disagrees with this position. There is no allegation that the employees did not otherwise perform their jobs. When the employers found out that their employees committed fraud, the employers terminated them. However, the fraud and the termination do not necessarily compel the conclusion that the employers are entitled to a refund of the salaries paid for legitimate work. The Court would have to determine what portion of the salaries, if any, were not earned by the coaches. The government's belief that the employers lost the full value of their employees' salaries is not supported by the evidence. There must be an effort to apportion salary that is "lost" based on specific misconduct tied to the defendant. *See United States v. Tadios*, 822 F.3d 501, 503-04 (9th Cir. 2016). Accordingly, the Probation Office disputes that the salaries of the coaches and test proctors are pecuniary harms for purposes of the guidelines, and even if they were, they were not reasonably foreseeable to the defendant as potential results of the offense. Further, the government has failed to explain how the salaries correlate to the amount paid by the defendant (which varied by defendant) or to the alleged harm that resulted. As such, the salaries are not losses under the guidelines.

Second, the government contends that the investigative and legal costs incurred by the schools and testing agencies are losses for purposes of the guidelines. The Probation Office disagrees with this position. None of the statements provided by the schools or testing agencies set forth any specific dollar amounts that the schools or testing agencies expended or lost as a result of the scheme. The Guidelines specifically exclude from loss "costs incurred by victims primarily to aid the government in the prosecution and criminal investigation of an offense." Application Note 4D(ii) to USSG §2B1.1. The investigative and legal costs of the schools and testing agencies are not cognizable as losses, have not been established by the government, and are not properly considered. The Probation Office further maintains that any internal investigations stemming from

the conduct involved in this case falls within the exclusion from loss cited above.  Investigative costs have no bearing on offense seriousness or defendant culpability and are not a proper measure of loss.  Further, the Probation Office is not aware of any legal authority to suggest that criminal defendants are responsible for investigative and legal costs sustained in connection with civil suits/claims.  Lastly, as noted in articles cited in the government's objections, the Probation Office questions what degree of responsibility lies with the schools and testing agencies for failing to properly oversee the admissions and testing processes to ensure that they were fair for all students.  Accordingly, the Probation Office disputes that any investigative and legal costs, including those separate from but stemming from the government's inquiry, are pecuniary harms for purposes of the guidelines, and even if they were, they were not reasonably foreseeable to the defendant as potential results of the offense.  Further, the government has failed to explain how the investigative costs correlate to the amount paid by the defendant (which varied by defendant) or to the alleged harm that resulted.  As such, the investigative costs are not losses under the guidelines.

The government contends that the testing agencies suffered foreseeable pecuniary harm for various reasons.  For the reasons noted above, the Probation Office disputes that the alleged harms, which include lost wages to proctors and costs of internal investigations, are losses under the guidelines.  Additional allegations of harm include costs of strengthening security practices, lost revenue from a decline of test takers, and the decline in value of intellectual property.  The Probation Office contends that these consequences are speculative, were not reasonably foreseeable to the defendants, and stem from reputational harm, which is not cognizable as pecuniary harm under the guidelines.  There might be various reasons why there has been a decline in schools' use of standardized tests, aside from this case.  Further, there is no evidence to suggest that any alleged reduction in value of the college entrance exams is directly attributed to the defendant's fraud; it may be due to more generalized trends in the college admissions process, which were perhaps highlighted by, but not caused by, the criminal conduct in this case.

Accordingly, since there is no reasonably foreseeable pecuniary harm in this case, there is no loss, and one cannot utilize gain as an alternative measure of loss.  Application Note #3(B) to USSG §2B1.1 clearly indicates that "The Court shall use the gain that resulted from the offense as an alternative measure of loss *only if there is a loss* but it reasonably cannot be determined." (emphasis added).  The government has proposed the alternative position that the value of the bribes represent gain.  For the above noted reasons, the Probation Office disagrees and maintains that since there is no loss in this case, gain cannot be used as alternative measure of loss.  Furthermore, even if gain were to be considered, the government has failed to explain how the bribe amount represents a gain.  The government has suggested that the value of the bribe represents the fair market value of what the defendants received in return for the bribe, i.e., a high test score (or an admissions slot); however, the Probation Office disagrees that there is any correlation between these items.  Defendants paid varying prices for their participation in the schemes, and the price paid appears to have been more the result of arbitrary negotiations between Singer and the defendants.  The government has failed to adequately explain why the bribe amount should be considered gain.  Accordingly, because there is no loss, the Court cannot consider gain, and even if the Court made this consideration, the government has failed to explain how the bribe amount represents gain.

<u>Technical Guideline Application and Analysis of Sentencing Factors</u>

The Court must first properly calculate the guidelines, and then by using variances and/or departures if necessary, arrive at a sentence which best captures the defendant's culpability and the sentencing factors of 18 U.S.C. § 3553(a). Courts have long established the advisory nature of the guidelines and the fact that the guidelines are the starting point of the analysis and the initial benchmark for the Court's consideration. Courts may vary from guidelines based on policy considerations or disagreements with the guidelines, and Courts may also consider another guideline to assist in its 18 U.S.C. § 3553(a) analysis. As noted previously, the Probation Office has suggested that the Court may want to consider an upward departure in some cases (but not this case) if it finds that the guidelines do not adequately capture the seriousness of the offense.

The Probation Office maintains that it has applied the correct technical application of the guidelines for the above referenced reasons. The Probation Office does not see a mechanism for using the value of the bribe as a measure of the defendant's culpability under the guidelines. The Probation Office recognizes that there may be a "gap" in the guidelines with respect to computing loss/gain/value of the bribe for honest services fraud that may at some point be remedied by the Sentencing Commission, as it did when special instructions were added to §2B1.1 for calculating loss in mortgage fraud and health care fraud cases. Without any special instruction for an honest services fraud case of a non-commercial nature between private parties, the Probation Office has considered the facts, the law, and guideline application principles in its determination that USSG §2B1.1 is the appropriate guideline and that there is no loss or gain under §2B1.1.

The Court understands that the technical application of the guidelines, while a necessary step, is just one factor for the Court's consideration of the appropriate sentence. While the parties and the Probation Office may disagree as to the proper guideline calculation, that does not change the defendant's conduct and the other factors, beyond the value of the bribe, that the Court must consider in evaluating the seriousness of the offense. These factors may include, among others, the scope and duration of the defendant's participation, the specific criminal activities in which the defendant participated (which scheme or both schemes), the number of children involved, or the fact of whether the defendant's children were admitted to any schools. The point is that the Court may evaluate various factors and arrive at the same sentence, regardless of whether it adopts the guidelines position espoused in the plea agreement, the presentence report, or its own calculation.

<u>Analysis of USSG §2B1.1 versus §2B4.1</u>

The Probation Office maintains that it has correctly utilized USSG §2B1.1 as the applicable guideline for the fraudulent conduct. The Probation Office does not agree with the government's suggestion that USSG §2B4.1 "Bribery in Procurement of Bank Loan and Other Commercial Bribery" could be applicable. The Probation Office conducted legal research and consulted with the United States Sentencing Commission and others on this issue.

The first step in any sentencing calculation is to determine the appropriate offense guideline section. Pursuant to USSG §1B1.2(a), one must determine the offense guideline section applicable to the offense of conviction. The guideline provides instructions to refer to the Statutory Index at Appendix A to determine the Chapter Two offense guideline." Although it presumably could, the Statutory Index does not distinguish between honest services fraud and substantive acts of fraud

and it does not distinguish between mail fraud and wire fraud.  For any of these charges, the Statutory Index at Appendix A directs the calculator to §§2B1.1 and 2C1.1.  Section 2C1.1 addresses fraud and bribery related to color of official right or public officials.  Section 2B1.1 covers "Fraud and Deceit."  Appendix A does not list USSG §2B4.1 as an offense guideline section applicable to the statutes of conviction for fraud.  When more than one guideline is referenced, one must use the guideline most appropriate for the offense conduct charged in the count of conviction.  USSG §2C1.1 is not applicable; thus, the most appropriate guideline is USSG §2B1.1.  Accordingly, the Statutory Index does not permit use of USSG §2B4.1 for the defendant's offense of conviction.

The instructions in the Guidelines Manual are mandatory unless they conflict with the Constitution or a federal statute.  *Stinson v. United States*, 508 U.S. 36 (1993).  The government has suggested that one should look to the cross reference at USSG §2B1.1(c)(3) and apply USSG §2B4.1 because "the conduct set forth in the count of conviction establishes an offense" that is allegedly "specifically covered by another guideline in Chapter Two," namely, §2B4.1.

The government cites various cases in which courts have applied a USSG §2B4.1 analysis; however, the facts and reasons for those applications did not in all cases delineate why USSG §2B4.1 was the proper guideline other than that the cases involved bribery.  Although some courts outside of the First Circuit have applied USSG §2B4.1 to certain instances of wire and mail fraud, these cases do not support the government's apparent position that USSG §2B1.1 would *never* apply to honest services fraud.  Further, none of those cases stand for the proposition that all private party (non-public official) honest services fraud cases should be calculated under §2B4.1.

After the decision in *Skilling v. United States*, 561 U.S. 358 (2010), *every* case of honest services fraud must include a bribe or a kickback.  Thus, under the government's theory, the cross-reference section of §2B1.1 would make §2B4.1 the appropriate guidelines for *every* private-sector honest services fraud case with no limiting principle.  In the same way that the Sentencing Commission spoke clearly in the Statutory Index that public-sector honest services fraud cases are governed by §2C1.1, if the Commission intended *every* private-sector honest services fraud case to be governed by §2B4.1 instead of §2B1.1, it is reasonable to expect the Commission would have cited to §2B4.1 in the Statutory Index, rather than expecting the calculator to apply a cross-reference in every single instance.

There is no precedent for the proposition that §2B4.1 is the correct guideline for *all* private-sector honest services fraud.  Rather, courts that have analyzed this issue have attempted to weigh which guideline is more appropriate.  *See United States v. Hauptman*, 111 F.3d 48 (7th Cir. 1997) ("Indeed we cannot fathom the government's thinking in acceding in the plea agreement to the use of the bribery guideline. . . [I]t is not, to repeat, merely a case in which a bribe deprives the bribed employee's employer of the employee's undivided loyalty.  It is a case in which bribery is the means used to defraud that employer…"); *United States v. Frost*, 125 F. 3d 346 (6th Cir. 1997) (applying what is now §2B1.1 where the defendant was convicted of mail fraud and honest services mail fraud in a "degrees-for-contracts" scheme); *United States v. Poirer*, 321 F.3d 1024 (11th Cir. 2003) (weighing whether "the defendants' conduct more closely resembled a fraud achieved through bribery [or] a straight fraud.").  These cases considered whether the underlying conduct sounded more like a fraud case or bribery/kickbacks case.

Fraud Scheme versus Bribery Scheme

The college admissions scheme is better classified as a fraud scheme than a bribery scheme. Because the elements of honest services fraud include both a scheme to defraud and a bribe or kickback, determining whether such conduct is more fraud or more bribery is challenging. However, the central scheme alleged in the Information seems to fit more as a fraud scheme than a bribery scheme.  The government has repeatedly emphasized the fraudulent aspects of this scheme.  The original complaint against the parents charged in this scheme includes hundreds of specific details about the fraud, including handwriting samples, allegedly doctored photographs, fabricated athletic profiles, falsified athletic credentials, falsified college applications, fake athletic activities/awards, fabricated learning disabilities to qualify for testing, fabricated reasons for taking tests at Singer's centers, and falsified test scores sent to colleges and used for admission.  It is hard for the government to now claim that the fraud is a small piece of a classic bribery prosecution.  Thus, the overarching scheme seems to fit far better as a fraud scheme than a bribery scheme.  In fact, when the government entered into the plea agreement, it considered this primarily a fraud case, not a bribery case, because it selected §2B1.1 for purposes of the guideline calculations.  In summary, the government elected to prosecute fraud offenses.

If Deemed a Bribery Scheme, it is not Commercial Bribery and Use of §2B4.1 is Not Appropriate

The government has suggested that one can apply USSG §2B4.1 through use of the cross reference at USSG §2B1.1(c)(3) and related Application Note #17.  The cross reference indicates that if the defendant is charged with fraudulent statements or representations generally under 18 U.S.C. § 1343 (and other specified statutes) and the conduct set forth in the count of conviction *establishes an offense* specifically covered by another guideline in Chapter Two, apply that other guideline. The Probation Office does not believe that the counts of conviction *establish* an offense specifically covered by USSG §2B4.1, which involves bribery in the procurement of bank loans and other commercial bribery offenses and kickbacks.  The Background Commentary to USSG §2B4.1 reflects that the guideline applies to violations of various federal bribery statutes that do not include government officials, and the applicable statutes involve conduct including: bribes in the procurement of loans from financial institutions; bribes to induce the award of subcontracts on federal projects; bribes and kickbacks in connection with presidential nominating conventions and election campaigns; and sports bribery.  In this case, the defendant is not convicted of a federal bribery statute, and the case does not involve the types of commercial bribery contemplated by this guideline.  Further, this case does not involve those types of cases or examples referenced in Application Note 17 to USSG §2B1.1 to which the cross reference may apply.  The defendant's counts of conviction involved conspiracy to commit mail fraud and honest services mail fraud, not bribery.  Further, even though the Information references bribes, the conduct clearly details a fraudulent scheme in which bribes were only the means used to facilitate the essence of the conduct, which is fraud.  The counts of conviction do not establish a commercial bribery offense such that USSG §2B4.1 is applicable.

Accordingly, the Probation Office maintains that it has correctly determined that there is no victim for guideline purposes and properly computed the defendant's guidelines under USSG §2B1.1, determining that there is no loss or gain.  The government's comments are noted herein for the Court's review, and no changes have been made to the report.