1                    UNITED STATES DISTRICT COURT

2                     DISTRICT OF MASSACHUSETTS

3      _____

4      UNITED STATES OF AMERICA,

5                         Plaintiff,        Criminal Action
                                            No. 19-cr-10117-IT-6
6      v.
                                            September 13, 2019
7      FELICITY HUFFMAN,
                                            Pages 1 to 48
8                         Defendants.

9      _____

10

11

12                TRANSCRIPT OF SENTENCING HEARING
              BEFORE THE HONORABLE INDIRA TALWANI
13                 UNITED STATES DISTRICT COURT
                 JOHN J. MOAKLEY U.S. COURTHOUSE
14                      ONE COURTHOUSE WAY
                  BOSTON, MASSACHUSETTS   02210

15

16

17

18

19                   JOAN M. DALY, RMR, CRR
                      Official Court Reporter
20               John J. Moakley U.S. Courthouse
                  One Courthouse Way, Room 5507
21                Boston, Massachusetts   02210
                     joanmdaly62@gmail.com
22

23

24

25

1   APPEARANCES:

2

    FOR THE GOVERNMENT:

3

            ERIC ROSEN, AUSA
4           JUSTIN O'CONNELL, AUSA
            KRISTIN A. KEARNEY, AUSA
5           LESLIE WRIGHT AUSA
            Assistant U.S. Attorneys
6           U.S. Attorney's Office
            John J. Moakley Courthouse
7           One Courthouse Way, Suite 9200
            Boston, Massachusetts 02210
8           617.748.3100
            eric.rosen@usdoj.gov
9           justin.o'connell@usdoj.gov
            kristen.kearney@usdoj.gov
10          leslie.wright@usdoj.gov

11

    FOR THE DEFENDANT FELICITY HUFFMAN:

12

            MARTIN F. MURPHY, ESQUIRE
13          JULIA G. AMRHEIN, ESQUIRE
            Foley Hoag LLP
14          155 Seaport Boulevard
            Seaport World Trade Center West
15          Boston, Massachusetts 02210
            617.832.1713
16          jamrhein@foleyhoag.com
            mmurphy@foleyhoag.com

17

18

19

20

21

22

23

24

25

1              P R O C E E D I N G S

2                    (The following proceedings were held in open

3      court before the Honorable Indira Talwani, United States

4      District Judge, United States District Court, District of

5      Massachusetts, at the John J. Moakley United States

6      Courthouse, One Courthouse Way, Boston, Massachusetts, on

7      September 13, 2019.)

8                    THE CLERK:  All rise.  You may be seated.  United

9      States District Court is now in session.  The Honorable Judge

10     Indira Talwani presiding.  This is case number 19-CR-10117,

11     United States v. Felicity Huffman.  Will counsel please

12     identify yourselves for the record.

13                   MR. ROSEN:  Good afternoon, Your Honor.  Eric

14     Rosen, Kristen Kearney, Justin O'Connell and Leslie Wright

15     for the government.

16                   THE COURT:  Good afternoon.

17                   MR. MURPHY:  Good afternoon, Your Honor.  Martin

18     Murphy for Felicity Huffman.

19                   MS. AMRHEIN:  Good afternoon, Your Honor.  Julia

20     Amrhein also for Felicity Huffman.

21                   THE COURT:  Good afternoon.  So we're here for

22     sentencing.  I'm going to start with the documents that I

23     have received and make sure I have what I should have.  The

24     presentence report prepared on August 9, 2019, and revised on

25     September 6, 2019; the government's sentencing memorandum as

1    to all defendants and the sentencing memorandum as to

2    Ms. Huffman, which were both filed on September 6; the

3    defendant's sentencing memorandum and accompanying exhibits

4    also filed September 6.

5           I have two victim impact statements from testing

6    services.  There were others relating to the universities

7    that I did not consider in connection with this sentencing

8    except to the extent that that was addressed in the order I

9    issued earlier today.

10          There is a sealed exhibit that the government

11   submitted on September 10; the defendant's reply memorandum

12   which was filed on the 12th.  To my knowledge that is the

13   only material that's been submitted to me by the parties; is

14   that correct?

15          MR. ROSEN:  That's correct, Your Honor.

16          MR. MURPHY:  That's correct, Your Honor.  We did

17   file an additional letter that we received from the Clerk's

18   office this morning.

19          THE COURT:  Thank you.  Do you want to pass that to

20   me?  In addition to the letter, this is a letter that came in

21   electronically yesterday.  I have received some pieces of

22   correspondence directly to chambers over the last few months.

23   Some of those I have -- Well, I guess I've read them all,

24   although some of them were some time ago.  I have not

25   reviewed them in connection with the sentencing.

1          There have been other communications from the

2    public that were sent directly to the Clerk's office.  I

3    believe you've gotten copies of those now from the Clerks?

4          MR. ROSEN:  We have.

5          MR. MURPHY:  We received them a few moments ago,

6    yes, Your Honor.

7          THE COURT:  So at this point I am not relying on

8    any of that.  Certainly the material that went directly to

9    the Clerk and wasn't intending to read unless either side

10   wanted me to in advance of sentencing.  The other letters, as

11   I said, I have read, but they were some time ago, and I don't

12   anticipate that they would affect the sentencing.  But again

13   if either side wants to submit something from that, you are

14   welcome to.

15         MR. MURPHY:  We do not, Your Honor.  Thank you.

16         MR. ROSEN:  No, Your Honor.

17         THE COURT:  So with that we will proceed with the

18   material I have here for probation.  There you are.  Was any

19   information withheld from the presentence report?

20         THE PROBATION OFFICER:  No, Your Honor.

21         THE COURT:  Mr. Rosen, do you have any witnesses or

22   victims present who plan to make a statement?

23         MR. ROSEN:  We do not.

24         THE COURT:  Mr. Murphy, have you had an opportunity

25   to review all of the materials submitted in connection with

1    the sentencing?

2            MR. MURPHY:  I have, Your Honor.

3            THE COURT:  And have you had a chance to go over it

4    with the defendant?

5            MR. MURPHY:  I have, Your Honor.

6            THE COURT:  And Ms. Huffman, have you had a chance

7    to review all the materials?

8            THE DEFENDANT:  Yes, I have, Your Honor.

9            THE COURT:  And have you discussed it with your

10   counsel?

11           THE DEFENDANT:  Yes, I have, Your Honor.

12           THE COURT:  And Mr. Murphy, were you expecting any

13   kind of evidentiary hearing or have any witnesses?

14           MR. MURPHY:  I was not, Your Honor.  Thank you.

15           THE COURT:  Okay.  Thank you.  So my procedure here

16   is to start with the presentence report, go through

17   objections and see which ones I need to resolve and resolve

18   the ones I need to, and then proceed from that to the

19   parties' sentencing recommendations.

20           I'm going to start first with the objections filed

21   by the defendant.  Objections 1 through 8 concerned a section

22   of the presentence report which is entitled general

23   background.  Other than moving the heading between paragraph

24   23 and 24, which is the heading for the college entrance exam

25   cheating scheme, and then the next heading on page 11, which

1   is the college recruitment scheme, I was going to suggest to

2   the probation officer to change where those headings are to

3   make clear that all of this is general background about the

4   overall events charged in the information in front of me.

5           It is the practice in this court that that whole

6   picture is given to the Court even where some of it doesn't

7   apply to the individual defendant.  So with those two

8   changes, I'm just making clear that those subsections are

9   subsections of the general background.  Is there anything

10  further I need to address out of that first set?

11          MR. MURPHY:  There isn't, Your Honor.  With respect

12  to the other objections, if I could say, they have all been

13  resolved to the satisfaction of the defendant.

14          THE COURT:  Okay.  And I would note that with

15  regard to those objections, some changes have been made and

16  other clarifications are now there in the presentence report

17  for me.  With that I think we're turning then to the

18  government's objections.

19          Objection 1 and 2 I think was addressed in the

20  order that I had docketed earlier today.  Any disagreement?

21          MR. ROSEN:  No disagreement.  I just want to

22  preserve for the record that we do believe the extra two

23  points here would apply under the guidelines.

24          THE COURT:  Objection noted.

25          MR. ROSEN:  Thank you.

1          THE COURT:  The government's objection 9, the

2    presence report said that there would be no restitution,

3    and the government's objection said that you may still file

4    something, essentially contending that you would have 90 days

5    after today to file something.  I think I understood from our

6    earlier hearing that you weren't intending to seek

7    restitution in this case.

8          MR. ROSEN:  That is correct.  We have conferred

9    with the victims here, and they have chosen not to seek

10   restitution from the Court or the defendant.

11         THE COURT:  And I would just clarify, to be clear

12   just with regard to the objection that the government made

13   there, Section 3664, 18 U.S.C. Section 3664, which is the

14   procedure for how to obtain restitution places the burden on

15   the government to, during the presence process but not

16   later than 60 days prior to sentencing, consult with victims,

17   promptly provide the probation officer with a listing of

18   amounts subject to restitution.

19         And this 90-day extension after sentencing is only

20   where the victims losses are not ascertainable, not

21   ascertained.  So the fact that a party that views itself as a

22   victim hasn't yet done the calculations is not a reason to

23   allow a late submission.  Instead I think that not

24   ascertainable would really address losses that occurred after

25   or too close to the date of sentencing to do them within the

schedule of the presentence report.  Anyway, but for today we don't need to do anything further on that.  I think that takes care of all of the objections; is that correct?  Recognizing that you have objections to the particular guideline numbers, which we'll go through.

MR. ROSEN:  Yes, Your Honor.

THE COURT:  Okay.  So the next thing that I need to do for purposes of sentencing is calculate what the guideline sentence is in this case.  As all the lawyers here know, this is a starting point for me, but it's a starting point that I am expected to get correct.  So I'm going to go through this.

The base offense level for a violation of 18 U.S.C. Section 1349, which is the conspiracy to commit mail fraud and honest services mail fraud, is a base offense level of 7.  Any dispute with that?

MR. ROSEN:  No, Your Honor.

MR. MURPHY:  No, Your Honor.

THE COURT:  Okay.  And then the probation officer and I have both concluded that there is no foreseeable or actual pecuniary harm to the testing services here, and, therefore, no measurable loss for purposes of the guidelines under this specific guideline.  And further, that gain cannot be used as an alternative measure of loss.

So I have a zero level increase for specific offense characteristics.  I understand the government

```
 1    disagrees and is reserving your objection that there should
 2    be a two-level enhancement.
 3              MR. ROSEN:  That's correct.
 4              THE COURT:  But I get to an adjusted offense level
 5    of 7.  A two-level decrease for acceptance of responsibility
 6    because the defendant has clearly demonstrated acceptance of
 7    responsibility for the offense, getting us to a guideline
 8    total offense level of 5.  Other than the objection that the
 9    government is preserving, is there any objection to that
10    calculation?
11              MR. ROSEN:  No, Your Honor.
12              MR. MURPHY:  No, Your Honor.
13              THE COURT:  And I then turn to criminal history,
14    and there is no criminal history here in the presentence
15    report.  I have a total criminal history points of zero,
16    Criminal History Category 1.  Any disagreement with that?
17              MR. ROSEN:  No, Your Honor.
18              MR. MURPHY:  No, Your Honor.
19              THE COURT:  Okay.  I'll go through the statutory
20    provision and the guideline provision, and then obviously I
21    need to determine what the appropriate sentence is.  But
22    here's our framework:  With a total offense level of 5 and a
23    Criminal History Category of 1 for the offense of conviction,
24    the statutory provision for custody is not more than 20
25    years.  The guideline provision is zero months to six months.
```

1    Supervised release, statutory provision is not more than

2    three years.  Guideline provision is one year to three years.

3    Statutory provision permits probation of one year to five

4    years.  The guideline provision is not more than three years.

5    The statutory provision allows for a fine of not more than

6    $250,000.  And the guideline provision here is $500 to

7    $9,500, my calculation of the offense level.  No restitution

8    as we have discussed.  I don't believe there's any forfeiture

9    at issue.  And a special assessment of $100.

10                Any disagreement with those figures.

11                MR. ROSEN:  Just on the fine calculation pursuant

12   to our earlier objection.

13                THE COURT:  Okay.  Thank you.  With that, I'm

14   prepared to hear the government's recommendation.

15                MR. ROSEN:  Could I use the podium, Your Honor?

16                THE COURT:  Absolutely.

17                MR. ROSEN:  Thank you.  The defendant, Felicity

18   Huffman, must go to jail for one month because the only

19   meaningful and sufficient sanction for the criminal activity

20   that she engaged in is prison.  Let me tell you why.

21                First, there is simply no excuse for what she did.

22   In her own sentencing materials, the defendant provides this

23   Court with a rationale for why she committed this crime.  She

24   told you that this crime resulted from the bewilderment,

25   anxiety and insecurity of being a mom.

1          We have no reason to doubt the sincerity of those

2     sentiments, but with all due respect to the defendant,

3     welcome to parenthood.  There's no instruction manual.

4     Parenthood is terrifying, exhausting, and stressful.  But

5     that's what every parent goes through.  What parenthood does

6     not do, it does not make you a felon.  It does not make you

7     cheat.  In fact, it makes you want to serve as a positive

8     role model for your kids, not someone who cuts corners.

9          We all want the best for our children, to give them

10    an edge that we believe they deserve.  But most parents have

11    the moral compass and integrity not to step over the line.

12    The defendant did not.

13         Second, imprisonment is needed because this was a

14    considered, deliberate, and purposeful criminal act.  I'm not

15    going to rehash the entirety of the crime as set forth in our

16    papers, but a few points should be made.  From the very

17    instant that the scheme was proposed to her by Rick Singer,

18    the defendant knew that it was wrong.  She even wrote down in

19    her own notes that an increase in her daughter's SAT score

20    could trigger an investigation.

21         The defendant then, instead of rejecting the plan,

22    took it under advisement.  She mulled it over for a period of

23    six weeks before finally agreeing to it.

24         The defendant then actively and enthusiastically

25    participated in the scheme.  She got the 100 percent extended

time that allowed her to take it at West Hollywood College

Prep.  She lied to her daughter's counselor to move the exam

to that test center.  She called the college board to ensure

that the test had been properly shipped.

Satisfied with the score that her daughter

received, she then paid Singer's charity $15,000.  Happy with

the results, she made plans to do it all over again.  But

that wasn't the end of the crime.  The whole purpose of

obtaining the fraudulent score was to send the score out to

universities nationwide to secure admission.  And the

defendant did just that from December of 2017 through October

of 2018, including to a university in the District of

Massachusetts.  But for her arrest in March of 2019, her plan

would have succeeded.

The defendant didn't just go into Walmart one day,

pick up a fake SAT score off the shelf and check out.  This

was not a blunder or a mistake.  This was deliberate and

intentional criminal conduct that occurred over a period of

18 months and which would have resulted in another deserving

student not getting in but for law enforcement intervention.

This was conduct that she had every opportunity to

disengage from, but she did not until the very very end.  She

deliberately chose to proceed with something that she knows

was wrong showing disdain and contempt for the rule of law,

and she should be punished appropriately for her actions.

1          Third, similarly situated defendants do and should

2  go to prison for their crimes.  The sentencing statistics for

3  2018 are posted on the Sentencing Commission's website.  For

4  that year 2018 nationwide, there were 2,128 U.S. citizen

5  defendants sentenced who had guidelines in zone A like the

6  defendant.

7          Of those, 26.6 percent received prison.  And 1.4

8  additional percent received prison plus some type of home

9  confinement or halfway house.  So nearly one-third of

10  similarly situated defendants went to jail.

11          Of course we do not look at just what zone the

12  defendants are in.  We must compare the defendant to those

13  who engage in similar conduct.  According to the Sentencing

14  Commission for 2017, 72.3 percent of all defendants sentenced

15  under 2B1.1, like those here, went to prison.  And in our

16  sentencing memo we cite to numerous --

17          THE COURT:  Let me just stop you on that second

18  statistic.  Are you saying 70 some percent of people with

19  this guideline provision or with this sentencing range went

20  to prison?

21          MR. ROSEN:  Just under 2B1.1, Your Honor.  Not the

22  sentencing range.

23          THE COURT:  So that number would reflect people

24  with different criminal history.

25          MR. ROSEN:  Different criminal history and also

1    different loss amount.  You're right.  In our sentencing memo

2    we do cite to numerous education fraud cases where defendants

3    did go to prison and some for lengthy periods of time.  The

4    point with including those cases, not to show that factually

5    they were alike, the point is that those who commit fraud in

6    the education context can be and have been sentenced to terms

7    of imprisonment.

8         We recognize that the conduct in those cases is

9    different in some respects, and we tailored our sentencing

10   recommendation here of just one month to be far below that of

11   the other defendants cited in our memo.

12        THE COURT:  So just in terms of what is helpful for

13   me and what is unnecessary for me to comb through.

14        MR. ROSEN:  Sure.

15        THE COURT:  You've given me a list of cases where

16   people had a far greater sentence than what you are seeking

17   here.

18        MR. ROSEN:  Correct.

19        THE COURT:  The defendant took the time to go

20   through and say here why the circumstances are all different,

21   and their analysis seems fairly compelling.  Is it a fair, a

22   more realistic analysis here is for me that certainly the

23   notion of prison is an open one.  But I am trying to make a

24   determination both of what's appropriate in this circumstance

25   based on the circumstances here.

1        And to the extent that I am looking at what is done

2   in comparable situations, I need to look at comparable ones.

3   And I guess my question is similarly how much time should we

4   waste on the ones or spend on the ones where there's a

5   four-year sentence or there's a much lengthier sentence, but

6   it's a very different set of circumstances.

7        MR. ROSEN:  It absolutely is, Judge.  The point of

8   including those -- Well, first of all, there are some that

9   are comparable.  I'm going to go through.  There's one I'm

10  going to talk about.  It's worth noting that imprisonment for

11  those cases, at least, when you have a systemic fraud, when

12  you have a corruption of the system, the point of showing

13  those cases was simply to show that prison can be used as a

14  means of punishment there.  That's all there was.

15       We look looked at those cases, looked at what the

16  defendants did, and then we tailored our recommendation down

17  from the four years, five years, down to a simple one month.

18  The point was simply to show that education matters, and a

19  prison sentence can be sufficient punishment for that.

20       It was interesting because you brought up the

21  compelling analysis of the defendant in their reply brief.

22  And, of course, we read that.  There's one case that the

23  defendant left out of their reply brief.  It's cited in ours.

24  We don't use the actual name of the defendant.  But it's the

25  case of Kelly Williams Bowler, a teacher's aid at a high

school for students with disabilities in Akron, Ohio.
Williams Bowler served ten days in prison for falsifying her
home address in order to get her daughters out of an
inner-city Akron school and into a better suburban school
district.

Ten days in prison for conduct far less egregious
than that of defendant here.  Williams Bowler lied.  She
cheated, and she went to jail.  If a poor single mom from
Akron, who is actually trying to provide a better education
for her kids, goes to jail, there is no reason that a
wealthy, privileged mother with all the legal means available
to her should avoid that same fate.

If we respect the rule of law, we should not treat
any defendant differently because of wealth or status.  And
if we believe in just punishment, we should not put the
Williams Bowlers in jail while letting the Huffmans go free.

But of course there are alternatives to
imprisonment.  But ultimately the purpose of sentencing here
and in every case is to punish.  Defendant acknowledges that
in her memo.  Yet the punishment she proposes, Judge, is
essentially no punishment at all.  She wants a year of
probation and 250 hours of community service.  Five hours of
community service each week are apparently sufficient to
punish the defendant.

Court-ordered community service is just not

appropriate here for the simple reason that in this case it's
not punishment.  The defendant already volunteers in her
community and in her daughter's school.  In her own
sentencing brief she writes that her volunteering and
fundraising for her daughter's high school was "nothing out
of the ordinary."

Punishment is not supposed to be something ordinary
for the defendant.  Punishment is doing something they don't
want to do, not something she already does and enjoys.

And what about that year of probation?  Probation
can be effective for offenders who need rehabilitation to
deter them from committing additional crimes and to provide
an opportunity to make restitution.  Often, as you know,
conditions of probation include keeping or maintaining
employment, having satisfactory living conditions, not using
illegal narcotics, going to treatment.

It is undisputed here that the defendant does not
fall in that category.  And the $20,000 fine for someone with
a net worth in the tens of millions, that's simply a rounding
error.  A sentence must be set that punishes.  A sentence of
imprisonment here does that.  Not just to make sure that this
defendant does not re-offend but also about the next Felicity
Huffman, the one watching this proceeding unfold, and will
think twice or three times before agreeing to cheat on a
standardized test or bribing a coach.  A message must be

sent.   And imprisonment is the only way to send that message.

Now, she does appear in her sentencing memo to recognize that the sentence she asks the Court to impose is, to put it charitably, light.   So she pivots to the explain to the Court that she has already suffered, and that's enough, I have been punished.   And what does she point to?   Well, the FBI arrested her at her house.   Meaning that she bristles about being treated like an ordinary person who has committed a crime.

She immediately became part of a major public spectacle.   So what?   As we point out in our memo, to accept that logic is to ascribe an inverse relationship between fame and punishment where the more famous you are, the less punishment you get.   Wealthy people who get their picture taken get off.   Poor people whose crimes garner little more than a press release go to jail.   But more important that logic simply confirms why prison is appropriate here.

In prison there is no paparazzi.   In prison, everyone is treated the same.   Everyone wears the same clothes and is subject to the same rules.   Prison, as we've pointed out, is the great leveler.   Prison is necessary here.

She laments that her daughter is not going to college and that both daughters remain angry at her.   Yes, when you commit crimes allegedly on their behalf and show them how little confidence you have in them, they will be and

have a right to be angry.  That is not a collateral
consequence of this case.  That is a consequence of her
actions regardless of whether or not she got caught.

And she doesn't know if or when she can work again.
She is extraordinarily talented.  I have high confidence that
she'll be able to find work.  Netflix just released her new
movie before she's even been sentenced here.  Memories fade.
Reputations are rebuilt.

I would like this Court to think about that when
Mr. Murphy stands up and talks about some of the cases in his
brief, like that of Xinyan Wang, a Chinese national, who took
the GRE exam on behalf of another student.  Wang received a
year probation from this Court last year.  But Wang was
subject to deportation for her crime and permanent banishment
effectively from the United States.  Wang's economic future
collapsed as a result of her conviction.

For the defendant, by contrast, with a net worth in
the tens of millions, she'll be just fine.  What the
defendant really wants this Court to do is rule that the fact
of being prosecuted alone is enough.  She has suffered and
she should not be punished any more.  But that simply cannot
be true.  It is not true from a moral perspective where we
are effectively setting aside punishment for those who are
not fortunate enough to be wealthy and powerful.  It is also
not true under the 3553(a) factors which bind this Court.

1    Every 3553(a) factor weighs in favor of imprisonment.  This

2    case is serious.

3         Defendant was part of the scheme designed to

4    corrupt the entire college application system on behalf of

5    people who already had the financial means to get what they

6    wanted legally.  She did this once, but she planned to do it

7    again, signaling an inherent disregard for the laws that

8    govern our society, and almost as importantly, for the rules

9    and norms of fairness.  And most importantly of all, a

10   sentence of imprisonment will be just.

11        If Kelly Williams Bowler can receive ten days in

12   jail for a crime far less egregious than that committed by

13   the defendant, I can say with the utmost confidence that a

14   sentence of 30 days in prison here is sufficient but not

15   greater than necessary to achieve justice.  Thank you.

16        THE COURT:  Thank you.  Your recommendation

17   included 12 months of supervised release; is that correct?

18        MR. ROSEN:  That is correct, Your Honor.

19        THE COURT:  And a fine of $20,000?

20        MR. ROSEN:  That is correct.

21        THE COURT:  And in your brief you requested

22   something I'd never seen before, an opportunity to submit

23   some proposed order concerning dispositions of fine proceeds.

24   It would be -- based on what I have in front of me, it

25   doesn't seem that this is a particularly fruitful avenue.

1   Unless you have some further argument, I would not be

2   inclined to allow for a subsequent order of that sort.

3           MR. ROSEN:  I think -- and I don't know the actual

4   result of that this time, Your Honor, but I think that the

5   purpose of that was to perhaps set up a fund or something

6   where fine monies will be paid directly as scholarship monies

7   to students or in that nature.  I just don't know the status

8   of that.

9           THE COURT:  I guess I'm saying to you from my point

10  of view, unless you have something more firm right now, I

11  think I have to proceed on the assumption that this is a fine

12  as normal.

13          MR. ROSEN:  That's fine.

14          THE COURT:  Thank you.  Defendant's recommendation,

15  please.

16          MR. MURPHY:  Thank you, Your Honor.  Your Honor, we

17  respectfully request that the Court impose a sentence of 12

18  months probation with a special condition that Ms. Huffman

19  perform 250 hours of community service and pay the $20,000

20  fine that is referred to in the plea agreement.

21          I won't repeat what I said in my sentencing

22  memorandum, but I would like to make five points.  First,

23  Your Honor, some of those will reinforce what the sentencing

24  memorandum says.  Others are to respond to what Mr. Rosen has

25  said here today and what the government says in its

1    sentencing memorandum.

2          First, Your Honor, the government expresses the

3    view in its pleadings and a moment ago that the sentence that

4    we have proposed, a sentence that is fundamentally a

5    probationary sentence, is not real punishment.  In the words

6    of the government's sentencing memorandum itself, it called

7    the sentence that we proposed or punishment other than

8    imprisonment a penological joke.

9          I would respectfully suggest, Your Honor, that that

10   is simply wrong, and it is wrong as a matter of law.

11         The Sentencing Reform Act makes a sentence of

12   probation real punishment.  The sentencing guidelines say

13   that for defendants, particularly ones who occupy the 0 to 6

14   guideline range zone, a sentence of probation is real

15   punishment.  Twelve years ago in the Supreme Court's opinion

16   in *Gall*, the Supreme Court said that a sentence of probation

17   is real punishment; that is, in their own words a substantial

18   restriction on liberty.

19         Last year the Sentencing Commission when it adopted

20   Amendment 811 urged courts, reminded them that when they are

21   considering defendants exactly like Ms. Huffman, first

22   offenders who commit nonviolent offenses, that they should

23   consider non-incarcerative sentences as an option.

24         For years the Department of Justice has opposed

25   these developments.  Twelve years ago in *Gall* it argued

1    against the Supreme Court's decision, the one the Supreme

2    Court ultimately reached.  Last year, the United States

3    Attorney for the district here went down to Washington and

4    testified against Amendment 811.

5              But the fact is that under the law, they have lost

6    those fights.

7              THE COURT:  So, Mr. Murphy, I agree with you in the

8    larger picture that probation can be a sufficient punishment

9    and an appropriate sentence.  I don't find helpful the

10   reference to it as a joke.  I think everything we're doing

11   here is very very serious, and I don't see it as a joke.  I

12   have had counsel suggest that maybe they would like a break

13   and take home confinement.  I don't think that's humorous.

14   Not this counsel.  I've had other counsel make that

15   suggestion.

16             So I take your point.  So you don't need to

17   convince me of that.  I understand the notion that one can

18   have a probation sentence.  I need to figure out the right

19   sentence in this case.  That's what I need to hear from you.

20             MR. MURPHY:  So let me move on to that.  Let me

21   address first the sentencing statistics.  Mr. Rosen has

22   culled out a few of them from I think different years.  We

23   hadn't seen those before, so the Court hasn't had an

24   opportunity to vet them.  We have, I respectfully suggest,

25   submitted a coherent picture of what the actual sentencing

1    data shows happens in cases that involve defendants who are

2    most similarly situated to Ms. Huffman.  That is,

3    sentences -- I don't mean to interrupt, Your Honor.

4            THE COURT:  And you've given me some numbers that

5    there's a small percentage of defendants in a 0 to 6 month

6    category who are serving jail time.

7            MR. MURPHY:  That's correct.

8            THE COURT:  Again my question would be why not this

9    case though.

10           MR. MURPHY:  And the reason, Your Honor, why not

11   this case, Your Honor?  I think first the Court has an

12   obligation to consider the need to avoid unwarranted

13   disparities.  So from our perspective, Your Honor, one of the

14   key things the Court should do is to impose a sentence that

15   treats Ms. Huffman like other similarly situated defendants.

16   Not treat her more harshly because of her wealth and fame or

17   treat her more favorably because of her wealth and fame.

18           So what those statistics show is what sentence

19   other judges have imposed on other defendants who engaged in

20   similar criminal conduct who had like similar criminal

21   records.  And the overwhelming percentage of those, Your

22   Honor, were not sentenced to jail on their sentencing dates,

23   the overwhelming percentage.

24           In the District of Massachusetts for the years that

25   we have data, of 127 similarly situated defendants, only a

1   handful, literally five, were sentenced to jail.  And all of

2   those defendants had aggravating factors that Ms. Huffman

3   does not have.  They were, for example, police officers who

4   abused a position of trust.

5           We have looked, the government has looked, we have

6   looked, and the probation department has looked at the range

7   of conduct that is at issue in this case.  There are

8   similarities certainly all of the defendants.  The common

9   denominator was they dealt with Mr. Singer.  But defendants

10  did different things.  And the government itself has

11  concluded that Ms. Huffman is one of the two least culpable

12  defendants in all of these cases by virtue of its sentencing

13  recommendation.  And there is good reason for that.

14          The probation department has likewise concluded

15  that there is no reason for a departure from the range of the

16  guidelines in this case.  We suggest, Your Honor, that if you

17  look at the way that this crime was committed, and we do not

18  in any way seek to minimize or excuse what Ms. Huffman did,

19  but the aggravating factors that were present in so many of

20  the other cases are not present here.  We've listed them out

21  on page 18 of our sentencing memorandum.  The amount that was

22  paid was the lowest amount paid of any parent.  And that's

23  only one factor especially under the Court's order today.

24          Ms. Huffman did not enlist her daughter in this

25  crime as some other parents did.  She did not seek to fake

1    any kind of educational test results.  She did not pretend
2    that her daughter was someone else other than what she was.
3    And perhaps most important, Your Honor, when she had the
4    opportunity to decide whether she was going to do this again,
5    she said no.  When she had the chance to decide what was she
6    going to do, she said no, I don't want to do this, it just
7    doesn't seem right.
8            That is a litmus test of Ms. Huffman's character.
9    Yes, she agreed to do this once, but she knew what she did
10   was wrong.  Her moral compass, she was able to revisit it,
11   was able to set it right, and she was able to say no the
12   second time.
13           I feel compelled, Your Honor, to address what
14   Mr. Rosen has said about Ms. Huffman's wealth and fame.
15   Counting between the government's original sentencing
16   memorandum, its sentencing memorandum for all of the
17   defendants and its statements here today, I count 27
18   references to Ms. Huffman's wealth and fame from the
19   government.
20           It is true, of course, that Ms. Huffman is
21   successful.  Like many successful people that has come as the
22   result of a number of different factors.  Good luck,
23   certainly plenty of that; talent; and certainly hard work.
24   And in her profession while there are many actors who labor
25   in obscurity and who struggle financially, actors who achieve

1    success at the highest levels become sometimes rich and

2    famous.  And that is certainly the case of Ms. Huffman.

3          I would never suggest, Your Honor, that Ms. Huffman

4    should be treated differently than other defendants because

5    she is wealthy and famous.  As a lawyer who has spent hours,

6    thousands of hours, I think, in the course of my career

7    representing indigent defendants in this court, the kind of

8    defendants the government most often focuses on prosecution,

9    I would never say that.  I don't know anyone who would.

10          But by the same token, Your Honor, it can't be the

11    case that Ms. Huffman should be treated more harshly because

12    of her financial circumstances and her notoriety.  I would

13    respectfully suggest, unlike what the government says, that

14    that is not fair.  What the law requires, I would

15    respectfully suggest, is a just sentence for every defendant

16    whether they are rich, whether they are poor, whether they

17    are famous, or whether they are unknown.

18          And we know what sentences judges impose on the

19    defendants who are similarly situated, the defendants who in

20    like cases have committed like crimes with similar records.

21    The overwhelming evidence shows that in those cases

22    defendants are not sentenced to prison, but they receive

23    sentences that are short of prison.

24          Mr. Rosen talked about the need to deter others.  I

25    would respectfully suggest, Your Honor, that there's nothing

about the statute or the sentencing guidelines that require a
sentence of prison to deter others.  Under the sentencing
guidelines and under 3553, imprisonment is not a kind of
default setting for the federal criminal sentencing system.
The Court in other cases I know has recognized that probation
can be a deterrent for others.  And here I think it would be.

I would suggest respectfully to the Court that no
parent or any other individual who has seen what has happened
to Ms. Huffman would knowingly choose to make the choice that
she has.  The consequences that she suffered are of her own
doing.  She recognizes that, and I am not suggesting
otherwise.  But there have been consequences.

Her daughter is not going to school next year.
Those consequences are continuing.  For example, one of the
organizations where we hope that she would be able to do
community service as part of our proposal, I get an email
from them today saying in light of the publicity run up to
this hearing today, they have withdrawn their offer to permit
Ms. Huffman to do community service there.

The consequences are likely to continue.  Every
defendant faces consequences that are difficult as a result
of a criminal sentence, and we are aware of those.  But it
does not follow that only a sentence of imprisonment would
deter others.  The fact of probation, the fact of what has
happened to her and a felony conviction is punishment.  And I

1      don't want to belabor that point.

2              Finally, Your Honor, I would like to talk a little

3      bit about Ms. Huffman's history and characteristics, a key

4      part of the analysis under Section 3553(a).  I think, Your

5      Honor, the letters that we've submitted and the evidence that

6      the probation officer found in the PSR leaves little doubt

7      that, this episode aside, her decision to commit this crime

8      aside, Ms. Huffman is a good, caring, and decent person.

9              I think the letters that we submitted are in my

10     experience extraordinary.  She did on this one occasion lose

11     sight of her moral compass and stray from the kind of good

12     and decent life that she has led through her entire life up

13     until that point.

14             But we know, Your Honor, that long before she knew

15     that this investigation was underway, long before she knew

16     that Rick Singer was taping his phone calls with her, long

17     before her arrest in this case, she made on her own

18     independently the decision to right the ship and to turn in

19     the right direction.  And when it came time to make the

20     decision about her younger daughter's testing, she said no.

21             I would respectfully suggest, Your Honor, that that

22     shows who Felicity Huffman really is.  And I would

23     respectfully urge the Court, Your Honor, to impose the

24     sentence that we have recommended, a sentence that serves all

25     of the purposes of Section 3553(a) and as the statute

1   requires is sufficient but not greater than necessary to

2   serve all of the purposes of sentencing under federal

3   sentencing law.  Thank you, Your Honor.

4           THE COURT:  Thank you.  Ms. Huffman, do you wish to

5   address the Court?

6           THE DEFENDANT:  Yes, Your Honor.  Thank you, Your

7   Honor, for this opportunity to speak.  Let me first say that

8   I am sorry to you, Judge Talwani.  As a federal judge, you

9   represent our country's legal system and the laws which I

10  have broken.  So my first apology belongs to you.

11          I am deeply sorry to the students, parents,

12  colleges, and universities who have been impacted by my

13  actions.  I am sorry to my daughter Sophia, my daughter

14  Georgia, and I am sorry to my husband Bill.  I have betrayed

15  them all.

16          As I have been thinking about what to say to you

17  here today, my mind kept returning to a 20-minute drive to

18  the testing center in December two years ago.  Sophia was in

19  the car next to me, and she was nervous about taking the SAT

20  and asking if afterwards we could get ice cream.  And as we

21  were making plans, I thought to myself, turn around, turn

22  around, just turn around.  And to my eternal shame, I didn't.

23          One of the hardest things I've had to face after my

24  arrest is when my daughter found out what I had done, and she

25  said to me, "I don't know who you are anymore, mom."  And

then she asked me, "Why didn't you believe in me?  Why didn't you think I could do it on my own?"  I had no adequate answer for her.  There is no adequate answer.  I can only say I am so sorry, Sophia.  I was frightened.  I was stupid, and I was so wrong.

I am deeply ashamed of what I have done.  I have inflicted more damage than I could ever imagine.  I now see all the things that led me down this road, but ultimately none of the reasons matter because at the end of the day I had a choice.  I could have said no.

I realize now with my mothering that love and truth must go hand in hand and that my love coming at the expense of truth is not real love.  I take full responsibility for my actions.  As a first step in making amends for my crime, I am prepared to accept whatever sentence you deem fit, and I will deserve whatever punishment you give me.

Thank you, Your Honor.

THE COURT:  Thank you.  In determining a reasonable sentence, I am required to consider the factors under 18 U.S.C. Section 3553(a), and I have done so in this case.  As I think of those factors, it moves around a little as I do these analyses in different cases, but they really fall into three areas.

I need to think about the defendant and the crime that is in front of me.  I need to consider under this the

1    nature and circumstances of the offense and the defendant's

2    personal and criminal history and characteristics.

3        I also have to consider the purposes of sentencing.

4    I need to consider the need that the sentence I impose

5    reflects the seriousness of the offense, promotes respect for

6    law, provides just punishment for the offense, affords

7    adequate deterrence to criminal conduct, protects the public

8    from further crimes of the defendant, provides the defendant

9    with needed educational or other training or corrective

10   treatment.

11       And then I need to think about the tools of

12   sentencing, the kinds of sentences that are available, the

13   sentencing ranges established for the category of offense

14   committed by the category of defendant under the guidelines

15   in effect at the time of sentencing.

16       And along with that policy statements issued by the

17   Sentencing Commission, the need to avoid unwarranted sentence

18   disparities among similarly situated defendants.  And where

19   appropriate the need to provide restitution.

20       In this case I've gone through those factors, and

21   I've gone through the parties' arguments and their briefs and

22   thinking about them here today again, and I would like to

23   take a few things off the table.  In the government's brief,

24   there was a notion that this scheme undermined confidence in

25   the college admission process generally.  I think here I need

a more direct causation before placing an undermining of
confidence in college admissions on these defendants.  And I
think it's important to reflect that the undermined
confidence in a meritocracy overall are an undermined
confidence in a level playing field has cracks in it with or
without what these defendants have done.  That admissions at
most schools are not need blind; that our current college
admission process does not guaranty the absence of the back
door that Rick Singer talked about, legal donations to help
you get in; that there's a preference for legacy students at
most schools; and that the incredibly high percentage of
spots at private colleges that go to families in the top 20
percent of our income brackets here.

          And finally, a surprising fact that I've learned
here is that very high rate of additional time for test
taking in wealthy communities compared to poor communities.

          All of those are issues in college admissions that
this case may have helped to bring to light but which are not
something that these defendants are going to be punished for.
They do, however, give the context of where all of this
happened.  And I just want to note on the additional time,
because I think it's important that the learning -- the
community that has sought and fought for this additional
time, that the issue here needs to be very clear.  That at
least in this case, and perhaps in many of the others,

there's no need, no showing that the need for additional time for test taking was not legitimate.

So I want to be clear that those may form a backdrop, but they're not something that I'm sentencing this defendant or probably most of the defendants here for.  And here, in particular, Ms. Huffman's actions aren't -- there's no allegation that she was involved in the college recruitment scheme.  We're talking here about the test taking.

As a further matter just sort of a little bit off the table for me, in the back and forth of the briefs, the government complained that the defendant had quibbled, I think was the word they used, about certain details, and that the import of this was to somehow try to argue to me that she was somehow less guilty.  I don't read the briefs that way. I don't think that is what she is implying in it.

I do take her as having a full acceptance of responsibility at this point.  There's also suggestions here, I think there were words about hypocrisy and profiting from fundamental duplicity.  I don't think any of that really will factor into my sentencing.

On the other hand, some of the arguments raised by the defendant also I am putting a bit aside.  There is the issue that the defendant -- that the arrest of the defendant was with FBI agents arriving with guns, that there was

1     trauma.  And the government's answer is, well, she's not

2     entitled to special treatment, that's how people are

3     arrested.

4              I don't know why an arrest with guns in her case

5     was necessary any more than I understand why an arrest with

6     guns is necessary in certain other cases.  If an individual

7     will show up and turn themselves in, it's perhaps really a

8     side issue and perhaps not an ideal way for things to

9     proceed.  But none of that is really the issue I need to

10    decide today.  I need to figure out, having now admitted to

11    the crime here, what the appropriate sentence is separate

12    from the experience of being prosecuted.

13             So I'm going to sort of turn to those sort of major

14    policies that I need to address through sentencing and

15    explain why I find some of the arguments that were raised

16    really fit into one or another.  One of the purposes of

17    sentencing is that I need to protect, I need to determine

18    what I need to do to protect the community from this specific

19    defendant, what's called specific deterrence.

20             And I don't think that there is any dispute here

21    that Ms. Huffman having chosen not to take these steps for

22    her second daughter after all of this -- after making the

23    choice in the first case; that she had nearly immediate

24    acceptance of responsibility once she was arrested.  And,

25    frankly, neither side is arguing that I need to impose prison

1  or take any other steps to protect the community from

2  Ms. Huffman.

3         Some of the defendant's arguments about punishment

4  I actually put under this heading, the notion that

5  Ms. Huffman did not seek out Mr. Singer; that she does have a

6  strong moral compass.  I think that those are factors, and

7  those impact me in finding that there is little I need to do

8  in sentencing to protect the community from Ms. Huffman going

9  forward.

10         I have to think about rehabilitation.  I think

11  community service is part of rehabilitation.  I think in this

12  circumstance it is not itself punishment, but I do think it's

13  an important part of rehabilitation, and I am going to order

14  community service in this case.  I would say that that

15  community service will be directed towards really direct

16  community service rather than trading on, even if the

17  organization may want you to do so, rather than trading on

18  your fame for their economic help, but rather have direct

19  one-on-one help with individuals.

20         But now I turn to punishment.  And here again need

21  to figure out what is just punishment, what reflects the

22  seriousness of the offense, what provides necessary general

23  deterrence.  Ms. Huffman compared to the other defendants, I

24  think the government's brief would agree that with regard to

25  culpability, she paid the smallest or one of the two smallest

bribes.  She was not a repeat player.  She did not involve

her child.  But we also know that she knew what she was doing

was wrong; that she did take many steps to facilitate the

scheme; and she knew it was a fraud.  It was not an impulsive

act.

Trying to be a good mother doesn't excuse this.  I

started out by talking a little bit about the larger

unfairness of the college system right now.  And this is a

system which does not have a pure meritocracy.  A person in a

position of wealth and the position you are is in a much

easier position in this meritocracy, in this college

admissions efforts.  And it is in that background that the

offense here needs to be considered.

I have trouble with the notion of general

deterrence in many many cases.  It doesn't make sense to me a

lot of the time.  I think about a person with a substance

abuse disorder.  They know that robbing the bank is going to

get them in trouble, whether they're looking at four years or

20 years, they're going to have no impulse control.  They're

going to go forward.  I don't see what I do here really

helping on the general deterrence from that circumstance.

But some of the behavior that we're trying to have

people follow and how they follow it isn't a question of just

if you do this you're going to get arrested.  Most of us,

most of what has to happen every day is people

1    self-regulating; that law abiding behavior is not because

2    people are afraid they will be caught but because they

3    understand the importance of that moral line that they're

4    crossing, why this would not be an acceptable action to take,

5    and they self-regulate, and don't do that.

6              And that's why I end up at the end here by just

7    really reflecting on why there was a sense of outrage in this

8    case.

9              It isn't because people discovered that there isn't

10   a true meritocracy out there.  I think most parents working

11   with their children know that their children had a hard row

12   to go in the first place.  That's not the outrage.  The

13   outrage isn't the harm to the colleges.  They may have been

14   harmed, but that's not the larger sense of what is happening

15   here, or the fact they might not get so many admission

16   applications or that the test -- the business of test taking

17   won't be so good.

18             The outrage is a system that is already so

19   distorted by money and privilege in the first place with some

20   children having small classes, individual tutoring or

21   counseling, homes with books and guidance and food and a roof

22   over your head, prep classes, friends who can help you find

23   good internships in the summer, help writing college essays,

24   college counselors along the way who can help diagnose your

25   child's learning problems.

1          In a system of that sort, in that context, that you

2     took the step of obtaining one more advantage to put your

3     child ahead of theirs.  And I think that is the reason that

4     general deterrence matters in this case.

5          The government says the question isn't how much

6     time in prison but that there is some period of incarceration

7     that should be imposed.  And in this case I am agreeing that

8     there should be incarceration imposed.  I am not imposing 30

9     days.  I don't think that is necessary.  I am imposing a

10    14-day sentence.  I'm also imposing a fine.

11         I am rejecting, as I said earlier, the government's

12    argument that I consider where this goes.  I don't think I

13    have the authority to do that.  I'm also -- although I don't

14    find the bribe amounts relevant to a determination of gain

15    and loss, I do think they have some relevance to the

16    defendant's understanding of this being an illegal

17    transaction, and that that dollar value has some meaning.

18         In many of these statutes there is a double gain or

19    loss from the guidelines as a maximum, and I am imposing a

20    $30,000 fine.  I am imposing supervised release for a period

21    of a year with 250 hours of community service working with

22    individual children or families at an approved placement.

23    The supervision conditions that I intend to impose are those

24    listed that were listed in the presentence report.  And I

25    assume if there are any objections to any of those, you will

Case 1:19-cr-10117-IT Document 474 Filed 09/23/19 Page 41 of 48

1    state them.

2           That's the sentence I intend to impose.  I will

3    give you a minute to let me know if there is any objection

4    from either side.  I don't think anybody wants to be going to

5    prison.  I do think that this is the right sentence here.  I

6    also think that in terms of your moving forward and your

7    rehabilitation, I think you take your sentence, you move

8    forward.  I truly appreciated you saying you would accept

9    whatever sentence I give you.  And you move forward and you

10   can rebuild your life after this.  You've paid your dues.

11          I think without this sentence, I think you would be

12   looking at a future with the community around you asking why

13   you had gotten away with this.  So that's the sentence I

14   intend to impose.  Is there any objection before I formally

15   impose it?

16          MR. ROSEN:  None from the government.

17          MR. MURPHY:  No objection, Your Honor.  I would

18   like to request that Ms. Huffman be permitted to self-report

19   and to ask for a particular recommendation of a federal

20   correctional institute.  I can do that at the end or do it

21   whenever the Court --

22          THE COURT:  Tell me the federal correctional

23   institute.  If you can give me a parameter for it, rather

24   than a specific name, I have a better likelihood of the

25   Bureau of Prisons doing what I've asked.

1          MR. MURPHY:  It is the federal correctional

2     institute in Dublin, California, which is the closest to

3     Ms. Huffman's residence likely to be able to accommodate what

4     I expect her designation would be.  So I would request that

5     she be given that specific facility.  And otherwise there's

6     no showing of any kind of security risk, that she be given

7     the lowest possible security designation closest to where she

8     lives.

9          THE COURT:  I can tell you that it has been

10     recommended to judges at our -- when we have interactions

11     with folks from the Bureau of Prisons, we don't determine the

12     placement.  They do.  We make recommendations, not orders, to

13     the Bureau of Prisons.  They are much happier fulfilling a

14     recommendation that has parameters rather than a specific

15     name of a facility.

16          They view that as their job, not mine.  So I would

17     anticipate making this recommendation as the closest facility

18     consistent with her security designation rather than

19     specifically identifying Dublin.  Would there be any

20     confusion of where else that would end up being?

21          MR. MURPHY:  I think, Your Honor, if you could also

22     specifically designate that it be the same level of

23     classification as Dublin, which is a low security camp, as

24     the saying goes, in federal correctional institute parlance.

25          THE COURT:  Again, I will make a recommendation.

1    Her presentence report has no suggestion that there would be

2    anything other than the lowest security designation.  But

3    again I think you have a better chance of getting what you

4    want without my stepping on their toes.

5           MR. MURPHY:  I appreciate that, Your Honor.  Thank

6    you.

7           THE COURT:  The government has no objection to her

8    self-reporting?

9           MR. ROSEN:  None, Your Honor.

10          THE COURT:  Ms. Huffman, will you please stand.

11          THE DEFENDANT:  Yes.

12          THE COURT:  Pursuant to the Sentencing Reform Act

13   of 1984, and having considered the sentencing factors

14   enumerated at 18 U.S.C. Section 3553(a), it is the judgment

15   of the Court that the defendant, Felicity Huffman, is hereby

16   sentenced to a term of imprisonment in the custody of the

17   Bureau of Prisons of 14 days.

18          Upon release from imprisonment, the defendant shall

19   be placed on supervised release for a term of one year.

20   Within 72 hours of release from custody of the Bureau of

21   Prisons, the defendant shall report in person to the district

22   to which the defendant is released.  It is further ordered

23   that you shall pay the United States a fine of $30,000.  That

24   lump sum payment of $30,000 is due within 14 days of

25   sentencing.  Any fine imposed is -- all fine payments shall

1    be made to the Clerk of the United States District Court, and

2    you shall notify the United States Attorney for this district

3    within 30 days of any change of mailing or residence address

4    that occurs while any portion of the fine remains unpaid.

5            While under the probation office's supervision, you

6    shall comply with the following terms and conditions:  Your

7    mandatory conditions of supervision, you must not commit

8    another federal, state or local crime.  You must not

9    unlawfully possess a controlled substance.  Drug testing

10   conditions are suspended based on the Court's determination

11   that the defendant poses a low risk of future substance

12   abuse.

13           You must cooperate in the collection of DNA as

14   directed by the probation officer.  You must comply with the

15   standard conditions that have been adopted by the Court,

16   which are described at sentencing guideline section 5D1.3(c)

17   and will be set forth in detail on the judgment.

18           You are prohibited from incurring new credit

19   charges or opening additional lines of credit without the

20   approval of the probation office while any financial

21   obligations remain outstanding.  You must provide the

22   probation office access to any financial information which

23   may be shared with the financial litigation unit of the U.S.

24   Attorney's Office while any financial obligations remain

25   outstanding.  And you must complete 250 hours of community

1    service at an agency approved by the probation office.  And I

2    do want that to be direct service to individuals or through

3    an agency to individuals or families.

4         And it is further ordered that you shall pay to the

5    United States a special assessment of $100 which shall be due

6    immediately.  The sentence is imposed for all the reasons

7    previously stated.  And because the Court believes the

8    sentence in all its components is reasonable and is a

9    sentence that is sufficient but not greater than necessary to

10   accomplish the goals of sentencing consistent with 18 U.S.C.

11   Section 353 and the Supreme Court's guidance.

12        The plea agreement you've entered into with the

13   government limits your rights of appeal.  Under the terms of

14   the plea agreement you have waived your right to challenge

15   your conviction on direct appeal or in a future proceeding.

16   However, you may still appeal on the ground of ineffective

17   assistance of counsel or that the prosecutor engaged in

18   misconduct.  And if you're unable to pay appeal costs, you

19   may ask for permission to appeal in forma pauperis.  With

20   that, the sentence is imposed as stated.  You may be seated.

21        I am making a determination by clear and convincing

22   evidence on the record here that Ms. Huffman is not likely to

23   flee or pose a danger to the safety of any other person or

24   the community if released, and I am releasing her at this

25   time.  Ms. Huffman, you are directed to self-report to the

1    designated Bureau of Prisons facility in six weeks.  Failure

2    to surrender for service of sentence pursuant to court order

3    shall result in punishment of a fine or imprisonment of not

4    more than ten years, not more than -- that doesn't look

5    right.  Not more than two years.  And any such term of

6    imprisonment is consecutive to the term of imprisonment for

7    any other offense.

8              And a person convicted of a crime committed while

9    on release shall be also sentenced consecutively to any other

10   sentence for imprisonment.  So with that you are directed to

11   self-report to a BOP facility that will be designated in six

12   weeks.  I will make the recommendation for the designation

13   that was requested by defense counsel.

14             Is there anything else we need to address today?

15             MR. ROSEN:  Nothing from the government, Your

16   Honor.

17             THE PROBATION OFFICER:  Your Honor, just so it's

18   clear, six weeks from today is October 25.

19             THE COURT:  Thank you.  October 25.  Anything else

20   from the defendant?

21             MR. MURPHY:  Nothing further, Your Honor.  Thank

22   you, Your Honor.

23             THE COURT:  Ms. Huffman, I wish you success moving

24   forward.

25             THE DEFENDANT:  Thank you, Your Honor.

1          THE CLERK:  Court is it in recess.  All rise.

2      (Court recessed at 3:47 p.m.)

1               - - - - - - - - - - -

2                      **CERTIFICATION**

3

4          I certify that the foregoing is a correct

5   transcript of the record of proceedings in the above-entitled

6   matter to the best of my skill and ability.

7

8

9

10  /s/ Joan M. Daly                    September 16, 2019

11

12  _____            _____

13  Joan M. Daly, RMR, CRR              Date
    Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25